Appeal by the City of Montgomery ("Montgomery") from a summary judgment in favor of JYD International, Inc. ("JYD"). We affirm.
Both Montgomery and JYD were named defendants in a personal injury action filed by L.T. and Lillian Farris. Their complaint alleged that Mrs. Farris was injured when she slipped and fell inside the Montgomery Civic Center, and that both defendants were guilty of negligence and wanton conduct in failing to remedy a hazard on the civic center's floor. L.T. sued for loss of consortium. At the time of the accident, *Page 593 
Mrs. Farris was employed by JYD, a tenant of the Montgomery Civic Center, as a temporary cash register operator. JYD, a merchandiser of oriental rugs, was occupying certain space in the civic center under a lease that contained, among other things, indemnity clauses that are in issue here.
JYD had leased the "River Room," and Mrs. Farris was to perform her duties there. On the day of the accident, Mrs. Farris entered the civic center, not from the two primary entrances, but from a service entrance at the rear of the civic center. She took a "short-cut" through the grand ballroom, and, as she crossed in front of the stage there, she slipped on an oily substance and fell, fracturing an arm. This action ensued.
Montgomery cross-claimed against JYD, demanding indemnification for any damages for which Montgomery would be held responsible as a result of Mrs. Farris's injuries. Thereafter, JYD moved for summary judgment on the Farrises' underlying tort claims. This motion was granted.
The Farrises' case against Montgomery was set for trial; however, before trial began, the cause was settled and dismissed.
Following the settlement, both Montgomery and JYD moved for summary judgment on the cross-claim. After consideration, the trial court granted summary judgment in favor of JYD, with the order citing this Court's decision in BrownMechanical Contractors, Inc. v. Centennial Ins. Co.,431 So.2d 932 (Ala. 1983). Montgomery's post-trial motion was denied, hence this appeal.
The indemnity provisions on which Montgomery relies for its recovery are contained in the lease between Montgomery and JYD. After describing the premises leased as the "River Room," to be used for the purpose of a rug sale, the lease provided:
"E. INSURANCE.
 "By the acceptance of this agreement Lessee covenants to indemnify, save and keep free and harmless the City of Montgomery, its officers and employees, from and against any and all claims, demands, loss, liability, cost or expense of any kind of nature whatsoever which the City, its officers or employees, or any of them, may sustain or incur, or that may be imposed upon them, or any damages to property arising out of, connected with or attributable to the use and occupancy of the facility by Lessee. . . .
". . .
"G. THE LESSEE HEREBY PROMISES AND AGREES:
 "7. To save the City of Montgomery and the Civic Center harmless and to indemnify them against any claims or liability arising or resulting from any injury to any visitor, spectator or participant in any activity in any part or portion of the Civic Center, regardless of entrance gained to said Civic Center
— by paid admissions, by pass issued by Lessee or Lessor or by any unlawful admission gained without knowledge of Lessor or Lessee.
". . .
 "I. IT IS FURTHER MUTUALLY AGREED BY AND BETWEEN THE PARTIES HERETO:
". . .
 "3. That the Lessor shall not be responsible for any damages or injury that may happen to the Lessee, or the Lessee's agents, servants, employees or property from any cause whatsoever, prior, during or subsequent to the period covered by this lease; and the said Lessee
hereby expressly releases said Lessor from, and agrees to indemnify it against any and all claims for such loss, damage or injury." (Emphasis added.)
The propriety of the summary judgment in favor of JYD on the Farrises' underlying tort claims is not contested here. Therefore, the dispositive question becomes whether JYD must indemnify the City pursuant to the agreement at issue for the City's negligence in connection with an incident that took place not within the leased area. *Page 594 
Agreements by which one party agrees to indemnify another for the consequences of the other's acts or omissions are carefully scrutinized. Agreements that purport to indemnify another for the other's intentional conduct are void as a matter of public policy. Pruet v. Dugger-Holmes Associates, 276 Ala. 403, 162 So.2d 613 (1964). An agreement by one person to indemnify another for the other's negligent conduct is enforceable only if the indemnity provisions are unambiguous and unequivocal. IndustrialTile, Inc. v. Stewart, 388 So.2d 171 (Ala. 1980), cert. denied, 449 U.S. 1081, 101 S.Ct. 864, 66 L.Ed.2d 805 (1981). The strong policy arguments against such agreements were stated in Housing Authority of Birmingham District v.Morris, 244 Ala. 557, 563, 14 So.2d 527, 531 (1943):
 "[I]t is a well recognized general principle, founded on human experience, that, 'Agreements exempting persons from liability for negligence induce a want of care, for the highest incentives to the exercise of due care rest in consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from the cause. It has therefore been declared to be a good doctrine that no person may contract against his own negligence. * * *' "
In Industrial Tile we rejected the rule of no indemnification for the indemnitee's own negligence:
 "The Court's insistence that such provisions be unambiguous and unequivocal arises from its concern that, generally speaking, one should not be able to contract against the consequences of his own wrong. However, as stated in 41 Am.Jur.2d, Indemnity, § 9 (1968), the general rule seems to be:
 " 'Broadly speaking, a promise of indemnity for the performance of an act not illegal, immoral, or against public policy is valid. Thus, indemnity against loss on account of a business transaction is proper. And, although there is some earlier authority to the contrary, it is now the prevailing rule that a contract may validly provide for the indemnification of one against, or relieve him from liability for, his own future acts of negligence provided the indemnity against such negligence is made unequivocally clear in the contract.'
"Section 15 [Am.Jur.]:
 " 'A contract of indemnity purporting or claimed to relieve one from the consequences of his failure to exercise ordinary care must be strictly construed. Accordingly, it is frequently stated as the general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it.'
 "Alabama has generally followed these general rules when construing contracts between private parties, as distinguished from corporations performing a public service. American District Telegraph Company of Alabama v. Roberts Son, Inc., 219 Ala. 595, 122 So. 837
(1929).
 "Industrial Tile argues that Alabama, in 1978, in Alabama Great Southern Railroad Co. v. Sumter Plywood Corp., 359 So.2d 1140 (Ala. 1978), rejected the general rule and now follows the rule that, as between private parties, any contract which permits the indemnification of the indemnitee against his own wrongs is void as against public policy. We agree that there is language in the opinion which supports Industrial Tile's contentions. However, after carefully reviewing all of the authority in this state, we are compelled to conclude that, if the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld. To the extent that Alabama Great Southern Railroad Co. v. Sumter Plywood Corp., *Page 595 
supra, holds otherwise, it is hereby modified."
388 So.2d at 176.
While the per se elimination of indemnity was rejected inIndustrial Tile, Inc. v. Stewart, supra, it was rejected by way of an implicit balancing of the interests served by tort law and the interests served by contract law. The tort law incentive to exercise due care could be shifted to the indemnitor through a negotiated contract but only if the indemnitor was clearly aware of his obligation and therefore was at least given the opportunity to attempt to monitor the activities of those whom he indemnified. While the tort law incentive is clearly less effective if the actual actor is not required to shoulder the burden associated with his actions, at least some safety incentive theoretically exists in, and can be acted on by, the indemnitor.
Assuming, without deciding, that the language employed unequivocally and unambiguously expressed the intent to indemnify Montgomery against its own negligence, we are still confronted with the question of whether as a matter of public policy such a contract can be enforced with respect to injuries that occur outside of the immediate area of the leased premises.
In Brown Mechanical Contractors, Inc. v. CentennialIns. Co., 431 So.2d 932 (Ala. 1983), we noted that the degree of control retained by the indemnitee over the activity or property giving rise to liability is a relevant consideration. This is true because the smaller the degree of control retained by the indemnitee, the more reasonable it is for the indemnitor, who has control, to bear the full burden of responsibility for injuries that occur in that area. However, the opposite is also true: The more control the indemnitee retains over the area, the less reasonable it is for the indemnitor to bear the responsibility for injuries that occur in that area. In this case, the mishap took place in an area not within the actual leased area and, for all that appears from the record, an area in which the lessee (the indemnitor) had no right of control. To allow the indemnitee to transfer financial responsibility to the indemnitor under such circumstances would be totally at odds with the tort system's incentives to encourage safety measures. See Industrial Tile, Inc., supra (Jones, J., dissenting). Any argument that the agreement simply shifts the burden to the indemnitor to take such measures is untenable if the indemnitor has no right to exercise control over the potentially hazardous area or activity. Taken to its extreme, the agreement in this case could cast upon the lessee the responsibility for accidents that occur due to defects in sidewalks or parking lots at the civic center. Arguably, the language in paragraph E is so broad as to encompass injuries resulting from Montgomery's failure to properly maintain the streets by which people traveled to the civic center.
We hold that the agreement by which the indemnitee attempts to obtain indemnity for its own negligence, under these circumstances, is void as against public policy.
AFFIRMED.
JONES, ALMON, SHORES and ADAMS, JJ., concur.
MADDOX, BEATTY, HOUSTON and STEAGALL, JJ., dissent.