824 So.2d 747 (2002)
ROYAL INSURANCE COMPANY OF AMERICA, as subrogee of R.E. Grills Construction Co., Inc.
v.
WHITAKER CONTRACTING CORP.
1000944.
Supreme Court of Alabama.
January 11, 2002.
*748 Richard W. Lewis and Joseph E.B. Stewart of Austill, Lewis & Simms, P.C., Birmingham, for plaintiff.
F. Lane Finch, Jr., and Ryan M. Aday of Haskell, Slaughter, Young & Rediker, L.L.C., Birmingham, for defendant.
STUART, Justice.
The United States Court of Appeals for the Eleventh Circuit has certified the following question to this Court:
"Must an indemnity agreement specifically state that an indemnitor will indemnify the indemnitee for a nondelegable duty to which the indemnitee is subject under state law to require indemnification for the failure to execute such nondelegable duty, which results in the underlying cause of action for which indemnification is sought?"
We answer this question in the negative.

Background
In November 1993, R.E. Grills Construction Co., Inc. ("Grills"), a general contractor, entered into a contract with the State of Alabama; pursuant to that contract Grills was to widen, grade, provide drainage, and pave approximately a six-mile stretch of Alabama Highway 75 in Blount County. The contract incorporated designated portions of the Alabama Highway Department Standard Specifications for Highway Construction (1992 ed.) ("the standard specifications"). The standard specifications required Grills, as the general contractor, to "assume full responsibility for the continuous and expeditious maintenance of all construction warning signs, barricades and other traffic control devices"; they also provided that the general contractor
"is not relieved of his responsibility to continuously review and maintain all traffic handling measures and insure himself that adequate provisions have been made for the safety of the public and workmen. Construction signs and other traffic control devices specified by plan details are considered the necessary requirements for satisfactory traffic control."
Grills subsequently entered into a subcontract with Whitaker Contracting Corp. ("Whitaker"), pursuant to which Whitaker was to perform the paving of Highway 75 required by the contract between Grills and the State. Grills provided the form of the subcontract between Whitaker and Grills; that subcontract contained the following indemnity agreement:
"The Subcontractor covenants to indemnify and save harmless and exonerate the Contractor and the Owner of and from all liability, claims and demands for bodily injury and property damage arising out of the Work undertaken by the Subcontractor, its employees, agents or its subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor, whether or not in whole or in part to conditions, acts or omissions done or permitted by the Contractor or Owner."
On April 11, 1996, automobiles being driven by Rhonda Chase and Vicky Hood Washburn collided at the intersection of Highway 75 and Blount County Road 1, on *749 that portion of Highway 75 that was the subject of the contract between Grills and the State and of the paving subcontract between Grills and Whitaker. Chase died as a result of the injuries she sustained in the collision.
The administratrix of Chase's estate (hereinafter referred to as "Chase" or "Chase's estate") sued Whitaker, Washburn, and Washburn's insurance carrier in state court. During her deposition, Washburn, who was attempting to enter Highway 75 from County Road 1 when the accident occurred, testified that barricades, barrels, and equipment at the construction site obstructed her ability to see north onto Highway 75 and contributed to her pulling out in front of Chase's vehicle.
After the deposition, Chase filed an amended complaint, adding various negligence claims against Grills. In those claims, Chase alleged, among other things, that Grills had breached its duty of ordinary care by failing to follow the traffic-control plan designed for the job site on Highway 75 and that Grills had failed to provide an adequate number of barricades, barrels, signs, and other safety devices at the job site to protect the public.
During discovery in Chase's lawsuit, it was learned that the barrels and barricades that allegedly had obstructed Washburn's view were placed and maintained by Grills under the supervision of the Alabama Department of Transportation. It was also revealed during discovery that, before the date of the accident, those barrels and barricades had been set up 13 feet from the edge of Highway 75. However, at the time of the accident, they were within three to five feet of the edge of Highway 75. Although this three- to five-foot distance did not comply with the standard specifications, the parties learned during discovery that Grills's original placement of the barrels and barricades i.e., 13 feet from the highwaywas also not in compliance with the standard specifications or with the traffic-control plan specifically designed for the job site on Highway 75. Evidence was also presented in the form of deposition testimony by David Nooney, vice president of Grills, that, immediately upon learning of the accident, two employees of Grills placed additional barrels at the job site.
Additionally, the parties do not dispute that Whitaker was performing paving work on Highway 75 near the intersection of Highway 75 and County Road 1 on the date of the accident. However, no evidence other than the fact that Whitaker was paving Highway 75 in the vicinity of the accidentwas offered to establish that Whitaker had moved any of the barrels or barricades from where Grills had placed them.
On the morning of the trial, Grills settled the claims asserted against it for $400,000. Later that day, Whitaker settled the claims asserted against it for $250,000. The other defendants settled the claims pending against them for various amounts. Thus, the claims asserted by Chase's estate were never adjudicated, but were resolved through settlement, with no admission of liability by any of the defendants.
Royal Insurance Company of America ("Royal"), Grills's liability insurer, then sought indemnity from Whitaker for the $400,000 Royal paid on Grills's behalf to settle the claims against Grills. Whitaker denied that it was obligated to indemnify Grills or its insurer, and Royal instituted this action in the federal district court.
In the district-court action, Royal asserted that because a trier of fact could have reasonably determined that before the accident Whitaker had moved the barrels and barricades that Washburn says *750 blocked her line of sight, Whitaker had performed the acts upon which Chase's claims of liability against Grills were based. Accordingly, Royal claimed it was entitled to indemnification under the indemnity provision of the subcontract between Grills and Whitaker.
During his deposition, David Nooney, Grills's vice president, testified that he did not believe the indemnity provision required the subcontractor to indemnify Grills for Grills's own negligence. Royal's claims specialist, George Mahon, agreed with Nooney's interpretation of the indemnity provision. Moreover, both Nooney and Mahon admitted that the amended complaint stated claims against Grills for Grills's independent and active negligence or wantonness. However, both Nooney and Mahon claimed that Grills was not working at the job site on the day of the accident, while it is undisputed that Whitaker was working in the vicinity where the accident occurred. Therefore, according to Nooney and Mahon, Whitaker's personnel must have moved the barrels and barricades and thereby caused the accident. However, it was undisputed that employees of the Alabama Department of Transportation were present at the job site before the accident to inspect the barrels and the barricades; it was also undisputed that other persons were at the job site before the accident.
The district court granted Whitaker's motion for a summary judgment, finding that Royal was not entitled to indemnification under the indemnity provision in the subcontract between Grills and Whitaker. The district court held that Whitaker was not obligated to indemnify Royal under either of only two possible scenarios presented (1) that Grills was not itself negligent and that Whitaker therefore could not be required to indemnify Royal where Grills was never liable, or (2) that Grills was itself negligent and Royal could be seeking indemnification only under the express language of the indemnification provision. In holding that Royal was not entitled to indemnification if it was traveling under the second scenario, the district court found the indemnification provision to be ambiguous and "grammatically meaningless," and noted that the provision must be construed against Grills, the drafter of the provision. Therefore, the district court concluded, Royal could not enforce the indemnity provision.
Royal appealed, and the United States Court of Appeals for the Eleventh Circuit found that Grills had a nondelegable duty as a matter of law and as a matter of contract "to maintain a safe roadway for the traveling public during the road construction work." Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir.2001). According to the Eleventh Circuit, this was the basis on which Grills agreed to the settlement. 242 F.3d at 1041 ("Consequently, Grills settled the case with Chase's administratrix for $400,000, which Royal paid."). The Eleventh Circuit then stated:
"In this appeal, we must decide whether the indemnification agreement in Whitaker's subcontract with Grills entitles Royal to reimbursement from Whitaker of the $400,000 plus interest, costs, and attorney's fees that it has paid for Grills's settlement. Therefore, the issue to be resolved is whether Grills's nondelegable duty to provide a safe roadway for the traveling public, which was not stated specifically in the indemnity agreement, affects our analysis of this agreement under which Royal proceeds for reimbursement.
"The Alabama Supreme Court has decided that indemnity agreements between private parties are valid where the parties knowingly, evenhandedly, *751 and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language.' Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala.1980). Nevertheless, the Alabama Supreme Court subsequently clarified how strictly the `"clear and unequivocal language"' of the indemnity agreement is to be construed. Brown Mech. Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 945 (Ala.1983) (quoting Industrial Tile, 388 So.2d at 176). `Agreements by which one party agrees to indemnify another for the consequences of the other's acts or omissions are carefully scrutinized,' and such an agreement `is enforceable only if the indemnity provisions are unambiguous and unequivocal.' City of Montgomery v. JYD Int'l, Inc., 534 So.2d 592, 594 (Ala.1988).
"In Brown, the Alabama Supreme Court instructed that three factors are to be considered by a court interpreting an indemnity agreement: (1) `contractual language,' (2) `identity of the draftsman of the language,' and (3) `the indemnitee's retention of control.' Brown, 431 So.2d at 946. While particular language in the indemnity agreement is not required, the requisite intent of the parties must be clear. See id. at 945. Ambiguous language in an indemnity agreement is construed against the drafter. See id. at 946. Finally, we must consider `the degree of control retained by the indemnitee over the activity or property giving rise to liability.' Brown, 431 So.2d at 946; see City of Montgomery, 534 So.2d at 595 (`The more control the indemnitee retains over the area, the less reasonable it is for the indemnitor to bear the responsibility for injuries that occur in that area.').
"The district judge concluded that the indemnity agreement in this case is `ambiguous' and `grammatically meaningless.'... Even if we were to supply `due' under Alabama rules of contract construction to overcome the ambiguity of the wording of the indemnity agreement at issue, as Royal suggests, we cannot resolve this appeal because we do not have direction from the Alabama Supreme Court that this indemnity agreement would include indemnity for Grills's failure to perform its nondelegable duty to insure a safe roadway for the traveling public when this omission is not specifically stated in the indemnity agreement as it was in Industrial Tile.

"Accordingly, we certify to the Supreme Court of Alabama ... the following question:
"`Must an indemnity agreement specifically state that an indemnitor [Whitaker] will indemnify the indemnitee [Royal] for a nondelegable duty to which the indemnitee [Royal] is subject under state law to require indemnification for the failure to execute such nondelegable duty, which results in the underlying cause of action for which indemnification is sought?'
"Our statement of the certified question is not meant to limit the scope of inquiry by the Alabama Supreme Court."
242 F.3d at 1041-44 (footnotes omitted).

Analysis
As the Eleventh Circuit noted, no reported case from this Court involves the precise fact situation presented herea cause of action resulting from an indemnitee's failure to perform a nondelegable duty under state law and for which it seeks indemnity. However, we have addressed the enforceability of agreements that seek *752 to indemnify a party for the negligent acts and omissions of another.
In City of Montgomery v. JYD International, Inc., 534 So.2d 592 (Ala.1988), this Court stated:
"Agreements by which one party agrees to indemnify another for the consequences of the other's acts or omissions are carefully scrutinized.... An agreement by one person to indemnify another for the other's negligent conduct is enforceable only if the indemnity provisions are unambiguous and unequivocal. Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala.1980), cert. denied, 449 U.S. 1081, 101 S.Ct. 864, 66 L.Ed.2d 805 (1981)....
"`. . . .'
"In Industrial Tile we rejected the rule of no indemnification for the indemnitee's own negligence:
"`The Court's insistence that such provisions be unambiguous and unequivocal arises from its concern that, generally speaking, one should not be able to contract against the consequences of his own wrong. However, as stated in 41 Am.Jur.2d, Indemnity, § 9 (1968), the general rule seems to be:
"`"Broadly speaking, a promise of indemnity for the performance of an act not illegal, immoral, or against public policy is valid. Thus, indemnity against loss on account of a business transaction is proper. And, although there is some earlier authority to the contrary, it is now the prevailing rule that a contract may validly provide for the indemnification of one against, or relieve him from liability for, his own future acts of negligence provided the indemnity against such negligence is made unequivocally clear in the contract."
"`Section 15 [Am.Jur.]:
"`"A contract of indemnity purporting or claimed to relieve one from the consequences of his failure to exercise ordinary care must be strictly construed. Accordingly, it is frequently stated as the general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it."
"`Alabama has generally followed these general rules when construing contracts between private parties, as distinguished from corporations performing a public service. American District Telegraph Company of Alabama v. Roberts & Son, Inc., 219 Ala. 595, 122 So. 837 (1929).
"`Industrial Tile argues that Alabama, in 1978, in Alabama Great Southern Railroad Co. v. Sumter Plywood Corp., 359 So.2d 1140 (Ala.1978), rejected the general rule and now follows the rule that, as between private parties, any contract which permits the indemnification of the indemnitee against his own wrongs is void as against public policy. We agree that there is language in the opinion which supports Industrial Tile's contentions. However, after carefully reviewing all of the authority in this state, we are compelled to conclude that, if the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld. To the extent that Alabama Great Southern *753 Railroad Co. v. Sumter Plywood Corp., supra, holds otherwise, it is hereby modified.'
"While the per se elimination of indemnity was rejected in Industrial Tile v. Stewart, supra, it was rejected by way of an implicit balancing of the interests served by tort law and the interests served by contract law. The tort law incentive to exercise due care could be shifted to the indemnitor through a negotiated contract but only if the indemnitor was clearly aware of his obligation and therefore was at least given the opportunity to attempt to monitor the activities of those whom he indemnified. While the tort law incentive is clearly less effective if the actual actor is not required to shoulder the burden associated with his actions, at least some safety incentive theoretically exists in, and can be acted on, by the indemnitor.
". . . .
"In Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala.1983), we noted that the degree of control retained by the indemnitee over the activity or property giving rise to liability is a relevant consideration. This is true because the smaller the degree of control retained by the indemnitee, the more reasonable it is for the indemnitor, who has control, to bear the full burden of responsibility for injuries that occur in that area. However, the opposite is also true: The more control the indemnitee retains over the area, the less reasonable it is for the indemnitor to bear the responsibility for the injuries that occur in that area.... To allow the indemnitee to transfer financial responsibility to the indemnitor under such circumstances [where the indemnitor has no control over the area where the injury occurs] would be totally at odds with the tort system's incentives to encourage safety measures. See Industrial Tile, Inc., supra (Jones, J., dissenting). Any argument that the agreement simply shifts the burden to the indemnitor to take such measures is untenable if the indemnitor has no right to exercise control over the potentially hazardous area or activity."
534 So.2d at 594-95.
Under the facts presented by this certified question, we find it unnecessary to expand upon the language quoted above. That language is applicable in this case: "if the parties knowingly, evenhandedly, and for valid consideration, intelligently entered into an agreement" whereby one party agreed to indemnify the other for its negligent acts and omissions, and the agreement is expressed in "clear and unequivocal language," then that agreement is enforceable under Alabama law. By the same rationale, the words "nondelegable duty" need not be expressly included in an indemnity provision before an agreement to indemnify a party for a breach of its nondelegable duty will be enforceable. However, the burden of proof is on the indemnitee to establish the requirements set forth above before the indemnitee is entitled to indemnification under such an agreement.
Accordingly, we answer the certified question presented in the negative. Our response is limited solely to the certified question presented; we express no opinion as to the manner in which this Court would resolve the factual or other legal issues presented by this case.
QUESTION ANSWERED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs in the result.
*754 JOHNSTONE, Justice (concurring in the result).
I concur only that our answer to the certified question should be in the negative. I do not concur in the rationale, because it does not address the question asked by the Eleventh Circuit.
The rationale of the main opinion advances only the proposition that, under certain circumstances, a party may contract for indemnification for that party's own negligence. The Eleventh Circuit did not ask us whether a party may contract for indemnification for that party's own negligence. Therefore, I express no opinion on that proposition.
The Eleventh Circuit asked us whether specified contract language is essential for a party to contract for indemnification for breach of that party's nondelegable duty. Contracting for indemnification for breach of the contracting party's nondelegable duty is not synonymous with contracting for indemnification for the party's own negligence. The nondelegability of a party's duty does not mean that the party must personally perform that duty and therefore cannot need indemnification for another's breach of that duty. Parties who owe nondelegable duties commonly and legally contract with others to perform them. The nondelegability of a party's duty simply makes that party liable even for a breach committed by a duly employed independent contractor, just as though the independent contractor were the agent of the party owing the nondelegable duty.
The nondelegability of a duty is not a prohibition against the owing party's contracting with another to perform the duty. The nondelegability is simply a safeguard and benefit to those who may be injured by a breach of the duty. First, the nondelegability motivates the owing party to exercise care in the selection of independent contractors. Second, the nondelegability adds the owing party as a source for payment even for injuries caused by the negligence of an independent contractor employed by the owing party. That is, the independent contractor's breach is deemed the owing party's breach because the duty is nondelegable.
The party owing the nondelegable duty typically would want and need indemnification for the liability he or it would incur from a hired independent contractor's breach of the duty. Such indemnification would not be for the nondelegable-dutyowing party's own personal negligence. Likewise, the party owing the nondelegable duty would commonly want and need indemnification against an injured plaintiff's allegations of that party's own negligence, even if the allegations were untrue, because typically an injured plaintiff will sue every person or entity with any significant relation to the injury, and such suits occasion the expenses of defense and often the expenses of a settlement based on pragmatism rather than actual truth, and because commonly the negligence of an independent contractor employed by the party owing the nondelegable duty will occasion such a suit.
Some of these fact scenarios not entailing the negligence of the party owing the nondelegable duty and claiming the right to indemnification may obtain in the case now before us. The Eleventh Circuit has not asked us to decide the facts.
The Eleventh Circuit has simply asked us about the contract language necessary to constitute a valid agreement for indemnification for the breach of a nondelegable duty. Specifically, the Eleventh Circuit asks whether the agreement must tell the indemnitor that the indemnitee's duty is nondelegable.
*755 The answer is no. Our law contains no requirement for any such recitation. Nor does any policy militate in favor of any such recitation.
The indemnitor in this case is Whitaker, an independent contractor who wanted to undertake the duty of the indemnitee Grills to pave the highway safely. Whitaker wanted to undertake the duty in order to earn the profits of the job. Grills, which owed the duty, needed for Whitaker to do the job safely and to indemnify Grills if Whitaker's performance injured somebody and occasioned a lawsuit, which Grills would inevitably need to defend. Whitaker wanted the job enough to agree to the indemnification.
What difference would a recitation in the indemnity agreement that the duty was nondelegable make to Whitaker? The nondelegability neither increased nor decreased Whitaker's burden in the performance of the paving duty. Whitaker would be liable for damages caused by Whitaker's own breach of that duty in any event. The nondelegability would simply make Grills liable too. Whitaker knew it was agreeing to indemnify Grills against some lawsuits. At the least, Whitaker would have expected that the agreement would require indemnification for a lawsuit occasioned by Whitaker's own breach of duty, the very kind of lawsuit that the nondelegability of the duty constituted a risk to Grills. Therefore, a recitation in the indemnification agreement that Grills's duty was nondelegable would have been superfluous. That is, such a recitation would have told Whitaker only that Grills would be liable for any damages caused by Whitaker's breach of the duty, when, as a minimum, Whitaker knew it was agreeing to indemnify Grills against lawsuits for such damages.
In the case, as here, of an independent contractor who undertakes a nondelegable duty owed by another, an agreement by the independent contractor to indemnify the other for a breach of the duty is beneficial and not harmful to those who may be injured by the breach. First, the indemnification obligation will motivate the independent contractor to perform the duty carefully in order to avoid causing an injury and owing money on the indemnification obligation. Second, the indemnification agreement does not deprive an injured plaintiff of any otherwise existing source of payment, for the party who owes the nondelegable duty remains liable for damages caused by its breach of that duty.