Rel: May 16, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0528

_____

### Joy Goodwin Adams

### v.

### Tiffany Rudd Atkinson, Katherine M. Rudd, Goodwin Capital Partners, Ltd., and KATISAM, Inc.

### Appeal from Jefferson Circuit Court
### (CV-23-904346)

MITCHELL, Justice.

Joy Goodwin Adams sued Tiffany Rudd Atkinson, Katherine M. Rudd ("Kate"), Goodwin Capital Partners, Ltd., and KATISAM, Inc. ("the

defendants"), demanding that they reimburse her for attorneys' fees she had paid to a third party. The Jefferson Circuit Court dismissed her suit with prejudice, and Joy appealed. At issue here is whether the terms "hold harmless" and "indemnify" are synonymous when those terms appear on their own in a contract. We hold that they are. The parties' agreement requires the defendants to "hold Joy … harmless" against a third party's demand for attorneys' fees in certain circumstances. And because Joy's complaint plausibly establishes that she may be entitled to indemnification for fees she paid to a third party, the circuit court erred in dismissing her suit. We therefore reverse the judgment of dismissal and remand the case for further proceedings.

Facts and Procedural History

This case involves three trusts and two agreements. We discuss each of the trusts and agreements and then review relevant prior litigation, including this case's procedural history.[1]

---

[1]Because this matter is before us on appeal from a judgment granting a motion to dismiss, we construe all facts in Joy's favor. Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993).

A. The Trusts and Agreements

We begin by summarizing the three trusts involved in this litigation. Joy's parents created two of them. In 1986, they created one for Joy's benefit ("the Shares trust"), which was operated as two separate trusts that were sometimes called "the Shares I trust" and "the Shares II trust." In 1987, they created the other trust ("the Grandchildren's trust") for the benefit of Joy's two daughters, Tiffany and Kate.

In 1989, Joy created the third trust at issue: the Joy Goodwin Rudd Irrevocable Trust ("the 1989 trust"). Both the Shares trust and the 1989 trust allowed the trustees to distribute income to Joy on a regular basis and to distribute the principal for her "health, education, support and maintenance." During her lifetime, Joy was the sole beneficiary of those trusts. If Joy died, however, any remaining assets from the Shares II trust and the 1989 trust would flow to the Grandchildren's trust -- and thus to Tiffany and Kate.

In later years, Joy executed two separate agreements. The first was a 2011 release-and-indemnification agreement ("the 2011 agreement") between Joy and a co-trustee of the Shares trust, Branch Banking & Trust ("BB&T"). In that agreement, Joy and BB&T agreed to terminate

3

the Shares trust because, in their view, its value did not justify the cost of managing it. See § 19-3B-414, Ala. Code 1975. In doing so, Joy promised to "indemnify" BB&T "against any and all liability, loss or expense (including, but not limited to reasonable counsel fees) that may be incurred as a result of any claim arising from the administration and termination of the [Shares trust]."

The second agreement arose after Tiffany and Kate sued Joy along with several trusts and two corporate trustees. Tiffany and Kate alleged various breaches of fiduciary duties, contending that Joy had improperly accessed money from the Shares trust and the 1989 trust. Goodwin Capital Partners and KATISAM were also parties to the lawsuit, but BB&T was not. To resolve the dispute, Joy and the defendants executed a settlement agreement ("the 2013 agreement").

Two relevant sections of the 2013 agreement are excerpted below. The first section, under the header "E. Survival of Representations and Warranties; Remedy" ("the indemnity provision"), states, in relevant part:

> "3. Indemnity. Joy shall indemnify Tiffany and Kate from and against any damages suffered ('Damages') by Tiffany and Kate as a result of any material breach of the representations

4

and warranties made by Joy in paragraph C of Article II of this Agreement …."

Under the 2013 agreement, Joy warranted that, among other things, an attached catalogue for Goodwin Capital Partners and KATISAM accurately reflected then-current assets, liabilities, and pending litigation.

The second section, titled "G. <u>Hold Harmless Agreement</u>" ("the hold-harmless provision"), states, in relevant part:

> "[The defendants] … agree to hold Joy and any trust or other entity which is a Party to this Agreement and which has custody of any assets for Joy's benefit, harmless against any claim, demand, action, or liability by any corporate trustee sued by or at the instance of Tiffany and/or Kate for attorneys' fees incurred by such trustee in its successful defense of any claim or suit arising from its administration of the Share II Trust, the 1989 Trust, and the Marital Trust which was asserted against it by Tiffany, Kate, or by any other entity at Tiffany or Kate's instance."

## B. Relevant Prior Litigation

After the parties executed the 2013 agreement, Tiffany and Kate sued BB&T and another corporate trustee for negligence. They alleged that those corporations had permitted Joy to breach fiduciary duties that were owed to Tiffany and Kate under the Shares trust and the 1989 trust.

The case was eventually removed to the United States District Court for the Northern District of Alabama.

In federal court, BB&T filed a summary-judgment motion as to Tiffany and Kate's negligence claim and asserted a third-party claim against Joy. Citing the 2011 agreement's indemnification provision, BB&T demanded that Joy reimburse it for past and future attorneys' fees relating to its defense against Tiffany and Kate's suit. In response, Joy sought summary judgment in her favor on this claim.

The federal district court ultimately granted BB&T's summary-judgment motion on Tiffany and Kate's negligence claim, and it denied Joy's motion on BB&T's indemnification claim.

Shortly thereafter, Joy demanded that the defendants pay the attorneys' fees that had been sought by BB&T, citing the 2013 agreement's hold-harmless provision. They refused. Joy then settled BB&T's claim for attorneys' fees for $614,791.62.

C. The Parties' Present Dispute

Joy filed this action in the Jefferson Circuit Court, requesting that the court enforce the 2013 agreement's hold-harmless provision and

require the defendants to pay her $614,791.62, plus interest and other costs.

The defendants moved to dismiss Joy's suit. In support, they made two principal arguments. First, they argued that the 2013 agreement's "hold … harmless" language does not mean to "indemnify." Rather, they argued, it means that they would not hold Joy responsible if (1) a corporate trustee successfully defended itself in a suit initiated by Tiffany and Kate and (2) later exercised its statutory right to reimbursement of attorneys' fees out of the trust property under § 19-3B-709, Ala. Code 1975. Second, they argued that, even if the 2013 agreement's "hold … harmless" language means that they must "indemnify" Joy against some claims, it does not extend to claims arising out of Joy's separate contractual obligation under the 2011 agreement to "indemnify" BB&T for attorneys' fees.

The circuit court granted the defendants' motion and dismissed Joy's suit with prejudice. Joy then appealed to our Court.

## Standard of Review

We review de novo dismissals under Rule 12(b)(6), Ala. R. Civ. P. Snider v. Morgan, 113 So. 3d 643, 649 (Ala. 2012). We construe all factual

7

allegations in the plaintiff's favor; dismissal is appropriate only when it appears that no set of circumstances would entitle her to relief. Id.

Analysis

We must determine here whether "hold … harmless" as used in the 2013 agreement is synonymous with "indemnify." Our analysis begins with the relevant history of the meaning of these terms. Next, we interpret the 2013 agreement's hold-harmless provision. Finally, we address the defendants' counterarguments.

A. History of the Phrase "to Indemnify and Hold Harmless"

In the law as in life, we usually resort to common understandings of words and phrases when we communicate. But the word "indemnify" and the phrase "hold harmless" are not common. They are instead what lawyers call "legal terms of art." And these terms often appear together -- i.e., "to indemnify and hold harmless" -- in a unit known as "doublet." See Bryan A. Garner, Garner's Dictionary of Legal Usage 294-96 (3d ed. 2011). A doublet refers to a pair of synonyms that both "amplif[y]" the intended meaning and "maximize" the reader's understanding. Id. at 294. Familiar examples are "aid and abet," "have and hold," and "part and parcel." Id. at 295.

Our Court has encountered variations of the "indemnify and hold harmless" doublet on a number of occasions. Indeed, all of the defendants' cited indemnification cases involve this doublet. And we have never noted a distinction between the terms. See Mobile Infirmary Ass'n v. Quest Diagnostics Clinical Lab'ys, Inc., 381 So. 3d 1133, 1134 (Ala. 2023) (describing an agreement in which a party agreed "to indemnify, defend and hold … harmless"); Holcim (US), Inc. v. Ohio Cas. Ins. Co., 38 So. 3d 722, 724 (Ala. 2009) (describing an agreement as one to "indemnify and hold harmless"); Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 824 So. 2d 747, 748 (Ala. 2002) (involving an agreement in which a "[party] covenant[ed] to indemnify and save harmless"); Stone Bldg. Co. v. Star Elec. Contractors, Inc., 796 So. 2d 1076, 1078 (Ala. 2000) (involving an agreement in which a "[party] covenant[ed] to indemnify and save harmless"); Nationwide Ret. Sols., Inc. v. PEBCO, Inc., 161 So. 3d 1141, 1144 (Ala. 2014) (involving an agreement in which a party agreed "to indemnify and hold harmless"); City of Montgomery v. JYD Int'l, Inc., 534 So. 2d 592, 593 (Ala. 1988) (citing an agreement in which the lessee promised "to indemnify, save and keep free and harmless" and also "[t]o save … harmless and to

9

indemnify"); <u>Industrial Tile, Inc. v. Stewart</u>, 388 So. 2d 171, 175 (Ala. 1980) (citing an agreement in which a party agreed "to indemnify and hold harmless").[2]

Alabama legal authorities similarly treat these terms as interchangeable. <u>See, e.g.</u>, Jenelle Mims Marsh, <u>Alabama Law of Damages</u> § 10:7 (6th ed. 2012) ("Such indemnification agreements or 'hold harmless' provisions are found in leases, subcontracts, bonds, and other contractual provisions." (footnotes omitted)); 2 Terry A. Moore, <u>Alabama Workers' Compensation</u> § 19:48 (2d ed. 2013) (summarizing an Alabama case as one in which the "owner sought indemnification pursuant to a hold harmless agreement"); 1 Angela K. Upchurch, <u>Alabama Personal Injury and Torts</u> § 1:30 (2023 ed.) (describing an Alabama case involving a suit for "indemnity" in which the agreement at

---

[2]While one cited case does not neatly follow this trend, it nonetheless confirms the rule. That case involved an agreement requiring a party "to defend and indemnify" and another agreement that used the doublet language, providing that one party "defend and indemnify … and hold … harmless" the other. <u>Doster Constr. Co. v. Marathon Elec. Contractors, Inc.</u>, 32 So. 3d 1277, 1280, 1281 (Ala. 2009). Our Court did not attribute a separate meaning to these phrases.

issue contained a clause obligating one party "to defend, indemnify, and hold the owner harmless …."").

Alabama's treatment of this doublet aligns with the majority view that "hold harmless" and "indemnify" are synonymous. Garner, supra, at 443-45 (collecting examples from dictionaries ranging from 1707 to 1970 demonstrating this understanding). According to lexicographer Bryan Garner, "[t]he evidence is overwhelming that indemnify and hold harmless are perfectly synonymous." Id. at 444. For our purposes, a good working definition of "indemnify" is "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default." Black's Law Dictionary 918 (11th ed. 2019).

But a minority of other jurisdictions say that these terms have distinct meanings, even when they appear in the doublet form. For instance, a California court contended that " '[i]ndemnify' is an offensive right -- a sword -- allowing an indemnitee to seek indemnification. 'Hold harmless' is defensive: The right not to be bothered by the other party itself seeking indemnification." Queen Villas Homeowners Ass'n v. TCB Prop. Mgmt., 149 Cal. App. 4th 1, 9, 56 Cal. Rptr. 3d 528, 534 (2007); see O'Connell v. Walt Disney World Co., 413 So. 2d 444, 446 (Fla. Dist. Ct.

11

App. 1982). Under this understanding, an "indemnification" provision means that Party A seeks to put someone else, which may be Party B, on the hook for liability arising from Party A's future negligent conduct. In contrast, a "hold harmless" provision means that Party A is personally asking Party B to release him from liability for his future negligence.

This doctrinal shift from treating "indemnify" and "hold harmless" as synonyms to distinct terms having independent meaning likely arose from lawyers aggressively applying the interpretive canon against "surplusage." See Garner, supra, at 444. That canon instructs interpreters to prefer readings that do not render a word meaningless or redundant. See Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So. 2d 722, 725 (Ala. 1995) ("Terms of a written instrument should be construed in pari materia and a construction adopted that gives effect to all terms used."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 26, at 174 (Thomson/West 2012). As Garner colorfully puts it, however, this canon is "not a bad rule when legal drafters abstain from larding their contracts with surplusage, but it's a horrible rule when they do." Garner, supra, at 444.

B. "Hold Harmless" as Used in the 2013 Agreement

This history informs our analysis of the core issue in this case, which is one of first impression for our Court: what do the terms "indemnify" and "hold harmless" mean if they are <u>split</u> into separate contractual provisions? While our Court has encountered provisions featuring "hold harmless" standing on its own, we have not squarely faced a case that hinged on that term's particular meaning. <u>See, e.g.</u>, <u>Reece v. Finch</u>, 562 So. 2d 195, 197-98 (Ala. 1990) ("'The undersigned hereby releases and agrees to hold harmless all persons or organizations releasing the information … from any liability arising out of the release or use of [it] ….'"); <u>First Nat'l Bank of Montgomery v. Fidelity & Deposit Co. of Maryland</u>, 145 Ala. 335, 338, 40 So. 415, 416 (1906) (noting in the reporter's summary that the agreement at issue stated that "'the undersigned agree to secure and hold harmless the [bank] against all contracts, claims, and demands ….'"); <u>see also</u> <u>Martin v. Republic Steel Co.</u>, 226 Ala. 209, 212, 146 So. 276, 279 (1933) (describing a contractual provision as one to "hold … harmless" that indemnified a defendant from future injury claims arising from either the plaintiff or third parties).

13

The 2013 agreement does just that. The indemnity provision states that "Joy shall <u>indemnify</u> Tiffany and Kate from and against any damages suffered … by [them]," while the hold-harmless provision states that "[the defendants] agree to <u>hold</u> Joy … <u>harmless</u> against any claim, demand, action, or liability …."   (Emphasis added.)

We hold that these terms are synonymous. As shown above, our Court and various Alabama authorities treat them as synonyms, particularly when they appear together. And while it is true that our Court presumes that a word or phrase bears the same meaning throughout a text and that "a material variation in terms suggests a variation in meaning," that rule is unsuitable for synonyms. <u>Cf.</u> Scalia & Garner, <u>Reading Law</u> § 25, at 170 (describing the "presumption of consistent usage" canon); <u>accord</u> <u>Ex parte Smiths Water & Sewer Auth.</u>, 982 So. 2d 484, 488 (Ala. 2007) (applying this canon in the statutory context). Absent indications that a term is used in a special or technical sense, we presume that the parties intended it to have its ordinary meaning. <u>See</u> <u>Ex parte Warren Averett Cos.</u>, 368 So. 3d 827, 835 (Ala. 2022). And nothing in the record before us indicates that the parties used a peculiar definition of "hold harmless."

14

### 1. "Hold Harmless" is Synonymous with "Indemnify" as Used in the 2013 Agreement

A parsing of the hold-harmless provision demonstrates that the defendants agreed to reimburse Joy for a portion of the fees she paid to BB&T. For clarity's sake, we break up that provision's various clauses into a digestible list. It provides that:

(1) The defendants agree to "hold Joy … harmless against any claim, demand, action, or liability"

(2) "by [BB&T]"

(3) "sued by or at the instance of Tiffany and/or Kate"

(4) "for attorneys' fees incurred by [BB&T] in its successful defense of any claim or suit"

(5) "arising from its administration of the Share II Trust, the 1989 Trust, and the Marital Trust"

(6) "which was asserted against it by Tiffany, Kate, or by any other entity at Tiffany or Kate's instance."

In other words, if Tiffany or Kate later sued BB&T for its actions as trustee, and BB&T successfully defended itself, the defendants agreed to "hold Joy … harmless against any claim … by [BB&T] … for attorneys' fees."

The litigation described above satisfies each condition for indemnification. In 2013, Tiffany and Kate sued BB&T for its alleged negligence arising from the administration of the Shares trust and the 1989 trust. After the case was removed to federal court, BB&T successfully defended itself and prevailed on summary judgment. And the court denied Joy's summary-judgment motion seeking to dismiss BB&T's third-party claim against her for attorneys' fees. Joy paid those fees (per the 2011 agreement) and then demanded that the defendants reimburse her.

Therefore, construing all the facts in her favor, Joy has plausibly demonstrated that the defendants promised to indemnify her against the portion of attorneys' fees that BB&T incurred in its "successful defense" against claims relating to its "administration of the Share II Trust." Any other construction of "hold … harmless" would be artificial and contrary to the settled understanding of these terms.

### 2. The Defendants' Counterarguments Are Not Persuasive

Even so, the defendants contend that "hold harmless" means only a first-party release, endorsing the view adopted by a minority of jurisdictions. See, e.g., Queen Villas Homeowners Ass'n, 149 Cal. App.

16

4th at 9, 56 Cal. Rptr. 3d at 534. In their view, the hold-harmless provision merely requires that they "hold Joy harmless (i.e., not hold Joy responsible for) from any liability that [the defendants] may incur as a result of BB&T's statutory right for reimbursement of fees and expenses should it prevail in the [federal case]." Defendants' brief at 22. They bolster their argument by pointing to the separate indemnification provision, which exclusively uses the word "indemnify," arguing that our Court must give a different meaning to "hold … harmless" as used elsewhere in the 2013 agreement.

We disagree. As discussed, the defendants' reading relies on a peculiar meaning of "hold harmless" as only providing a release of first-party claims. That definition has not been recognized by our Court. And, even on its own terms, their reading of the hold-harmless provision is the less natural one.

For instance, the hold-harmless provision plainly covers actions by BB&T against Joy, which would not be the case if "hold … harmless" merely meant that the defendants personally released Joy from liability. Use of the word "against" later in the same provision confirms this. It mentions "any claim or suit … which was asserted against [BB&T] by

17

Tiffany [or] Kate." Earlier, it says that the defendants agree to "hold Joy … harmless against any claim, demand, action, or liability by [BB&T] …." The provision thus contemplates actions by BB&T against Joy, not just actions by a third party against the defendants arising from BB&T's statutory right to reimbursement from trust assets. In short, the defendants cannot grant Joy a first-party release from a third-party claim against her.

The 2013 agreement's indemnity provision confirms that these terms are synonymous. That provision states: "Joy shall indemnify Tiffany and Kate from and against any damages suffered … by [them] as a result of any material breach of the representations and warranties made by Joy." As described above, Joy made warranties and representations about then-current assets, liabilities, and pending litigation for Goodwin Capital Partners and KATISAM. Any "damages" arising from a breach of those warranties and representations would then arise either directly from Joy's conduct or from suits initiated by third parties. As used in this provision, then, "indemnify" takes on its standard meaning.

18

The phrase "hold … harmless" does the same work in the 2013 agreement that the word "indemnify" does. Just as the parties agreed that Joy would "indemnify" Tiffany and Kate "from and against" damages, so too did they agree that the defendants would indemnify Joy "against any claim, demand, action, or liability by [BB&T] … for attorneys' fees." And, as stated earlier, the presumption that a material variation in terms implies a variation in meaning is unsuitable for synonyms. Cf. Smiths Water & Sewer Auth., 982 So. 2d at 488; Scalia & Garner, Reading Law § 25, at 170. "Indemnify" and "hold … harmless" are therefore synonymous as used in the 2013 agreement.

## Conclusion

Our holding today is narrow. We confirm the settled understanding that "indemnify" and "hold harmless" are synonyms when they appear as a doublet. As shown above, this understanding naturally extends to those terms when they appear separately and perform the same function. And while it is possible that, in other agreements, "hold harmless" appearing on its own may act as a first-party release, that should not be the starting presumption.

Because "hold … harmless" as used in the 2013 agreement is synonymous with "indemnify," the circuit court erred in dismissing Joy's suit with prejudice. We therefore reverse the circuit court's judgment and remand the case for further proceedings.

REVERSED AND REMANDED.

Wise and McCool, JJ., concur.

Stewart, C.J., and Sellers, J., concur in the result.