[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 326 
On April 20, 2000, Banks, Finley, White Co. (hereinafter "B.F.W."), an accounting firm, sued Bruce Wright, Kevin Walsh, and Jackie Davidson, all members of the Jefferson County Board of Education, in their individual capacities, and various fictitiously named parties, alleging that the defendants made false and defamatory statements concerning audits B.F.W. had performed for the Jefferson County Board of Education. The complaint sought compensatory and punitive damages totaling $10 million. The complaint alleged that the basis for these alleged false reports was a January 20, 2000, letter from the chief examiner of the Alabama Department of Examiners of Public Accounts to former superintendent Dr. Bruce Wright. In the letter, the chief examiner informed Dr. Wright that financial documentation at the Jefferson County Board of Education was so poor it would be necessary to suspend the annual audit. In addition, the chief examiner informed Dr. Wright that the Board was unable to account for $51 million. The complaint further alleged that the media subsequently became aware of the deficiencies alleged in the January 20, 2000, correspondence; that this information was reported in the Birmingham News, in articles published on January 27, January 28, and February 5, 2000, and in the Birmingham Post-Herald, in articles published on March 22, 2000; and that this information was broadcast on the Channel 6 news on February 7, 2000. The complaint also alleged that the defendants made derogatory comments about the accounting services performed by B.F.W.
Bruce Wright, Kevin Walsh, and Jackie Davidson responded to the complaint in a joint pleading captioned "Motion to Dismiss or in the Alternative, Judgment on the Pleadings." Briefs were filed in support of, and in opposition to, the motion to dismiss, along with complete copies of all but one of the articles cited or quoted in the complaint, and a complete copy of the transcript from the television broadcast referred to in the complaint. On October 20, 2000, the parties argued their respective positions on the motion in open court. The trial court, on October 23, 2000, held that because it had considered matters outside the pleadings, the defendants' motion to dismiss had been converted into a motion for summary judgment pursuant to Rule 56, Ala.R.Civ.P. The trial court then entered a summary judgment in favor of the defendants.
B.F.W. appealed to the Supreme Court because the amount of damages claimed in the complaint exceeded the jurisdictional dollar limit of the Court of Civil Appeals. The Supreme Court then transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975. *Page 327 
B.F.W. asserts that the trial court erred in failing to provide it with adequate notice before it converted the motion to dismiss into one for a summary judgment, that the trial court erred in holding that the defendants' statements were not defamatory as a matter of law, and that the trial court erred in holding that the defendants' statements were conditionally privileged.
The same requirements which govern Rule 56 summary judgments apply to a converted Rule 12(b)(6) motion. Graveman v. Wind Drift Owners' Ass'n,Inc., 607 So.2d 199 (Ala. 1992). Those requirements are: (1) that the nonmovant receive adequate notice of the trial court's intention to treat the motion as one for summary judgment and (2) that the nonmovant receive a reasonable opportunity to present material in opposition. Id. Our Supreme Court has held that the same 10-day notice required when a party moves for summary judgment is also required for a converted motion for summary judgment. Id. Further, notice that the court intends to treat a motion to dismiss as a Rule 56 motion for summary judgment need not be given by written order. However, the record must demonstrate that all parties were aware of the trial court's intention to treat the motion as a converted summary-judgment motion. Hales v. First Nat'l Bank of Mobile,380 So.2d 797 (Ala. 1980).
In the present case, B.F.W. attached a letter to its complaint as an exhibit. The letter attached to the complaint comes within the purview of Rule 10(c), Ala.R.Civ.P., and is considered a part of the pleadings "for all purposes." Rule 10(c), Ala.R.Civ.P. On May 30, 2000, the defendants moved for a dismissal or, in the alternative, for a judgment on the pleadings. On July 14, 2000, B.F.W. filed a memorandum of law in opposition to the defendants' motion.
On August 15, 2000, the defendants filed a brief in support of their motion to dismiss. In their brief, the defendants claimed that B.F.W. had taken words out of context and had liberally paraphrased, thereby suggesting a different meaning, or had distorted the words' meaning by adding or omitting key words. For this reason, the defendants explained, they appendaged to their brief in support of their motion to dismiss, reproduced in their entirety, articles and newspaper reports that B.F.W. explicitly referenced in its initial complaint.
This court has adopted a precedent, which a number of federal appellate courts have also embraced, that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." Wilson v. First Union Nat'l Bank ofGeorgia, 716 So.2d 722, 726 (Ala.Civ.App. 1998). Documents attached to a motion to dismiss are considered a part of the pleadings if those documents were specifically referred to in the plaintiff's complaint and are central to the claim being brought. Wilson, 716 So.2d at 727. Thus, the items the trial court determined to be outside of the pleadings were not "outside of the pleadings" under the holding of Wilson. The trial court was, therefore, not required under Wilson to convert the defendants' motion to dismiss into a motion for a summary judgment.
We must examine whether the trial court's unnecessary conversion prejudiced B.F.W. or whether the conversion amounted to merely harmless error. See Rule 61, Ala. R. Civ.P.
The trial court's conversion of a motion from a 12(b)(6) motion to a *Page 328 
summary-judgment motion had the effect of increasing B.F.W.'s burden of proof with regard to the motion. In order for the trial court to grant a motion for summary judgment, the trial court must determine that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden then shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989); § 12-21-12(d), Ala. Code 1975. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Westv. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). The standard of review of the grant of a motion to dismiss pursuant to Rule 12(b)(6) is set forth in Nance v. Matthews, 622 So.2d 297,299 (Ala. 1993):
 "On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala. 1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772
(Ala.Civ.App. 1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [it] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985). A Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala. 1986)."
We must examine the specific instances of alleged defamation and determine whether they are sufficient for us to decide whether B.F.W. could have met that burden under either standard. If B.F.W. could not have met that burden under either standard, then we must remand this case to the trial court to apply the appropriate legal standard.
In the trial court's judgment, the trial court stated, in pertinent part:
 "The Court has carefully considered the allegations of the complaint as well as the text of the newspaper articles and television report that are the bases of plaintiff's claims. The Court has also considered the context in which the statements (or alleged statements) were made. Finally, the Court has taken into account extensive written and oral arguments made by the parties and has reviewed applicable Alabama decisional law in reaching a conclusion as to the appropriate disposition of this case.
 "The Court is mindful of the heavy burden that is bourne by a defendant on a preliminary motion of the type before the Court. On the other hand, the essential facts necessary to decide the case are largely undisputed. Moreover, although B.F.W. vigorously contends that additional discovery is necessary in order to fully establish its claims, the Court is persuaded that further factual development would not change the applicable legal analysis or the result. *Page 329 
 "The Court is satisfied that questions and comments pertaining to the management of public school finances implicates matters of public concern and interest. Accordingly, the plaintiff must not only prove that the statements in question are defamatory, but that they were made with actual malice on the part of the defendants. If the plaintiff is deemed a public figure, constitutional considerations require that the plaintiff prove by clear and convincing evidence that the defendant's statements were made with knowledge of their falsity or that they were made recklessly, without regard for their truth or falsity. New York Times Co. v. Sullivan, 376 U.S. 254 (1964). However, even if a plaintiff is a private figure and the speech involves or touches on a matter of public concern, a defendant may avail himself or herself of a conditional or qualified privilege that will defeat a defamation action in the absence of allegations and proof of `common law malice.' Common law malice in its traditional sense `may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication and the like.' Fulton v. Advertiser Co., 388 So.2d 533 (Ala. 1980); Barnett v. Mobile County Personnel Bd., 536 So.2d 46 (Ala. 1988).
 "The test for determining whether a conditional or qualified privilege is available under such circumstances has been expressed as follows.
 "`Where a party makes a communication, and such communication is prompted by duty either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. . . . The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although, in fact he is mistaken.'
 "Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117
(Ala. 1976) (quoting Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290 (1923), cited in Browning v. Birmingham News, 348 So.2d 455 (Ala. 1977). The issue whether a communication is privileged by reason of its character or by reason of the occasion on which it was made is a question of law. Willis v. Demopolis Nursing Home, Inc., supra; Browning v. Birmingham News, Inc., supra."
The judge concluded his findings in his judgment by stating, "In any case, the subject matter of the alleged defamation addresses or touches upon a matter of unquestionable public concern." The trial court noted that B.F.W. strongly resisted any suggestion that it might be a public figure, but stated that, in any event, "the statements that are the basis of the plaintiff's claim do not support a claim of libel or slander."
The earliest newspaper article B.F.W. claims contained any defamatory material was published on January 27, 2000. B.F.W. was not specifically named in that article in which news reporters had reached Superintendent Bruce Wright, seeking a comment. The pertinent portion of the article reads as follows:
 "Asked who was to blame, Wright said that as superintendent, he is ultimately responsible. But he stressed that at no *Page 330 
time had the kind of problems found by the state auditors shown up in previous audits done by private companies the school system had hired over the past decade. He said that at no time did any member of his staff come to him with these kinds of problems. `I look at my financial statement, and, if it looks reasonable, I look at the audit and if it hasn't found any problems, then I have to think things are O.K.,' Wright said. `I have to depend on the people we've hired to do their jobs and on the auditing firms we've hired to do their jobs because we've got a $247 million budget in this system and I just can't look over everyone's shoulder everyday.' Wright refused to place the blame on any one person."
Later in the article, the President of the Jefferson County School Board, Jackie Davidson, expressed her shock: "Board members are disappointed and angry to learn of inadequacies and the apparent lack of supervision that must have existed in the Finance Department for the past eight to ten years." "Clearly some folks either didn't know how to do their jobs or chose not to do their jobs correctly," Davidson stated.
In the article that appeared in the Birmingham News the following day, on January 28, 2000, Davidson openly criticized B.F.W. for not giving the board sufficient warning of the impending financial disaster. The pertinent portion of that article reads as follows:
 "Board President Jackie Davidson also finds it incredible that past audits, most done by the Birmingham firm of Banks, Finley, White Company turned up nothing to indicate the record keeping problems found this month by state auditors. Banks, Finley, White Company has performed all audits in the school system since 1993.
 "`We paid taxpayer money over and above what the state required us to do to have annual audits and all of them found nothing, nothing to indicate the kinds of problems the state has found' Mrs. Davidson said."
In that same article, Jim White, the managing partner of B.F.W., made the following comment to the reporter:
 "Jim White, managing partner of Banks, Finley, White Company, said Thursday the reason his auditors didn't turn up any problems was because they didn't exist. `What the examiners found is just for one year, the past year, and we didn't audit that year,' White said. `This is not a systemic problem. All of this stuff occurred in the last year only. We didn't find anything like all this stuff the examiners found.'"
Another article the complaint alleged was defamatory appeared in the Saturday, February 5, 2000, Birmingham News/Post-Herald. The pertinent portion of the article read as follows:
 "Also on Friday, [Ron] Jones [chief examiner for the Department of Examiners of Public Accounts] sent a letter to the firm that has audited the school systems's financial books since 1993, acknowledging that their audits may have found some problems that warned of the system's deteriorating financial condition. Jones sent the letter to Jim White, managing partner of Banks, Finley, White Co. of Birmingham.
 "County school board members, Wright and Richardson have all pointed to the audits by White's firm and questioned why they did not warn of the impending financial crisis.
 "White responded this week saying his firm's audits did point out some problems, mostly sloppy bookkeeping management practices that could have led to the problems." *Page 331 
B.F.W. also alleged in its complaint that an interview televised on February 7, 2000, was defamatory. The portion of the script pertaining to the Jefferson County Board of Education budget shortfall appears below:
"FEBRUARY 7, 2000
"JEFFERSON COUNTY BOARD OF EDUCATION
"FOX NEWS 6 BROADCAST
 "Antoine Greene: `County School Board and Administrators can't account for 51 million dollars. How does that happen? Longtime Board Member Kevin Walsh has an idea.'
 "Kevin Walsh: `Incompetence on the part of the way budgets are submitted. Incompetence on the part of the way that we have been audited.'
 "Antoine Greene: `But the auditing firm says its not to blame. Jim White, the Managing Partner of Banks, Finley and White was out of town, but he told us by phone this letter from a State Department of Examiners of Public Accounts proves it. Chief Examiner Ron Jones says auditors gave the School Board information which may have indicated the deteriorating condition of the Board's records. But some School Board Members and Administrators believe auditors should have caught potential problems a lot earlier.'
 "Kevin Walsh: `But I think what you have here now is a problem with a company trying to save themselves when in fact there are probably aspects of what they did that were not perfectly correct. . . .'
 "Antoine Green: `But Jim White says his firm has advised the Board for years to hire an internal auditor and create a financial policies and regulations manual. Board Member Kevin Walsh says some suggestions were put into action and others weren't. Walsh says, bottom line, as a whole, the system doesn't have the right people managing the finances.'"
Our Supreme Court has stated that the plaintiff, to establish a prima facie case of defamation, must show that the defendant was at least negligent. See Mead Corp. v. Hicks, 448 So.2d 308 (Ala. 1983). When a defamatory publication is actionable per se, the law infers injury to reputation as a natural consequence of the defamation and, as a result, the plaintiff is entitled to presumed damages. Nelson v. Lapeyrouse GrainCorp., 534 So.2d 1085 (Ala. 1988).
The trial court found that the defense of conditional privilege applied to any allegedly slanderous comments contained in the published material. In Webster v. Byrd, 494 So.2d 31 (Ala. 1986), our Supreme Court stated that "[w]hether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge." The test for determining whether a conditional privilege exists is as follows:
 "`Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. . . . The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.' Willis v. Demopolis Nursing Home, *Page 332 Inc., 336 So.2d 1117, 1120 (Ala. 1976), quoting from Berry v. City of New York Insurance Co., 210 Ala. 369, 371, 98 So. 290, 292 (1923)."
494 So.2d at 36.
In Montgomery v. Big B, Inc., 460 So.2d 1286 (Ala. 1984), the Supreme Court found that an allegedly defamatory communication by corporate employees to a polygraph operator concerning the plaintiff's alleged deceitful conduct in a case involving misappropriation of corporate funds fell within this definition. The Court in Montgomery determined that because of a mutual interest in the missing funds, the conditional privilege applied. The Court in Nelson analogized that Brothers, the president of Lapeyrouse, had a corresponding interest in determining who among his staff was responsible for a grain shortage. The Nelson Court held that this common interest afforded the president a privilege to communicate to the polygraph operator Nelson's potential culpability.
If the declarants are deemed to possess a conditional privilege, the privilege is lost only if the privileged declarant "makes the communication in bad faith and with actual malice." Nelson, 534 So.2d at 1095. The plaintiff carries the burden of proving common law actual malice by presenting "`evidence of "previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or . . . violence of the defendant's language, [and] the mode and extent of publication, and the like." Kenney v. Gurley, 208 Ala. 623,626, 95 So. 34, 37 (1923).'" Nelson v. Lapeyrouse Grain Corporation, 534 So.2d at 1095.
The trial court found that the budget crisis of the Jefferson County School Board was a highly publicized matter that evoked great public concern. From the "four corners of the pleadings," including, underWilson, all the articles and the interview transcript attached to the motion to dismiss, this court is unable to determine with any degree of accuracy whether the members of the Jefferson County School Board who are the named defendants in this action were personally acquainted with any of the members of B.F.W. or if any of the defendants may have held ill will toward any B.F.W. principals. This court is further unable to determine with any degree of certainty whether the defendants had any professional opinion as to the quality of B.F.W.'s services. From the text of the articles attached to the motion to dismiss, the defendants merely appeared to be speculating as to how they could have arrived in such dire financial straits with so little notice. See Dent v. Smith, 414 So.2d 77
(Ala. 1982); Montgomery, 460 So.2d at 1288.
We conclude that it was error for the trial court to convert the motion to dismiss into a motion for a summary judgment because it considered no materials outside of the pleadings when it ruled on the motion to dismiss. See Wilson, supra. We conclude that this error on the part of the trial court was not harmless error under Rule 45, Ala.R.App.P., because we cannot say that B.F.W. can prove no set of circumstances under which it might be able to recover. See Nance, 622 So.2d at 297.
We agree with the trial court's holding that the budget crisis of the Jefferson County Board of Education was a matter of public concern. We conclude, however, that the trial court improperly converted the defendants' Rule 12(b)(6) motion into a motion for summary judgment, and that it thereby prejudiced B.F.W. by increasing its burden of proof and depriving B.F.W. of the 10-day notice period provided by Rule 56 in which to present any evidence it deemed necessary to rebut the contentions *Page 333 
of the moving parties. Richardson v. Cobb, 752 So.2d 1112 (Ala. 1999),Hales v. First Nat'l Bank of Mobile, 380 So.2d 797 (Ala. 1980).
Accordingly, the judgment of the trial court is reversed and the matter is remanded to the trial court.
REVERSED AND REMANDED.
CRAWLEY and THOMPSON, JJ., concur.
YATES, P.J., and MURDOCK, J., concur in the result.