SHAW, Justice.
Jeff Snider (“Jeff’), as administrator of the estate of Thelma June Smith Snider (“Thelma”), deceased, the plaintiff below, appeals from the trial court’s dismissal of his complaint against Marquita S. Morgan (“Morgan”), both as executrix of the estate of Troy Ray Snider (“Troy”), deceased, and on behalf of the estate of Harold Snider (“Harold”), deceased, and First Bank of Boaz (“First Bank”), the defendants below, for failure to state a claim upon which relief could be granted.[1] We affirm in part, reverse in part, and remand.

Facts and Procedural History

In October 1998, Thelma, the mother of Troy and Harold and the grandmother of Jeff and Morgan, executed a “General Power of Attorney” naming Troy and Harold her attorneys-in-fact. That document specifically provided that the enumerated powers could be performed by either Troy or Harold and that each was not required “to act in union with the other.” Thelma died intestate on March 13, 2006. Troy died testate in June 2009. In September 2009, Jeff obtained letters of administration naming him administrator of Thelma’s estate. In April 2010, Morgan obtained letters testamentary naming her executrix of Troy’s estate. Harold died, presumably testate, see infra note 5, in July 2010.
In February 2011, Jeff sued Morgan, as executrix of Troy’s estate; Harold’s estate; and First Bank. Jeffs complaint alleged that, before Thelma’s death, which was purportedly preceded by her declining physical and mental health resulting in her incompetency, Troy and Harold had “seized control of [Thelma’s] assets and used them to their own benefit.” The complaint specifically referenced a purported loan of $46,000 to Troy in January 1988 from Thelma and her husband, James F. Snider,[2] pursuant to which Thelma and *647 James allegedly obtained a mortgage on real property Troy owned.[3] It further alleged that, in May 2002, Harold, acting as Thelma’s alleged “attorney-in-fact,” had executed a release recorded in the Marshall County Probate Court acknowledging “full payment” of the accompanying indebtedness, satisfying the mortgage, and releasing Troy from further obligation thereon.[4] As a result of the foregoing, and because, according to Jeffs complaint, “the Loan had not been repaid” at the time of the aforementioned release, Jeff filed, on behalf of Thelma’s estate, a $46,000 claim against Troy’s estate, seeking “repayment of the Loan” plus interest as well as the repayment of “other monies wrongfully obtained from Thelma ... by Troy....”
Contending both that Thelma was incompetent at the time the release was executed and that Troy’s loan had not been repaid at the time of the release, Jeffs complaint, as subsequently amended, asserted a breach-of-contract claim against Harold’s estate (count I), alleging that Harold had breached his contractual duties to Thelma by “us[ing] his purported powers as [Thelma’s] purported attorney-in-fact to act contrary to [Thelma’s] best interests” and seeking appointment of an administrator ad litem of Harold’s estate;[5] asserted a breach-of-contract claim against Troy’s estate (count II), alleging that Troy breached an express or implied contract to repay the purported loan of $46,000; asserted an unjust-enrichment claim against both Troy’s estate and Harold’s estate (count III) based on Troy and Harold’s alleged knowing acceptance and enjoyment of Thelma’s money and assets without compensation to Thelma, “including without limitation,” Troy’s alleged wrongful failure to repay the $46,000 loan; asserted a claim labeled “money had and received” against Troy’s estate (count IV) based on Troy’s alleged “enjoy[ment] of the benefit of the loan without repaying same”; and asserted a claim for declaratory relief (count V),[6] seeking, among other relief, a declaration voiding the release executed by Harold, restoration of the mortgage, and a declaration of entitlement to full repayment of the outstanding loan balance by Troy’s estate, as well as a declaration as to the priority of Thelma’s mortgage over the subsequent mortgage of First Bank.
Morgan moved to dismiss Jeffs complaint. Specifically, Morgan argued that the breach-of-contract claim against Troy’s estate (count II), the unjust-enrichment claim (count III), and the money-had-and-received claim (count IV) were due to be dismissed under the “rule of repose.” See, e.g., American Gen. Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 812 (Ala. 2004) (“The common-law rule of repose, which is an affirmative defense, ... ‘bars actions that have not been commenced *648 within 20 years from the time they could have been commenced.’ ”). . She further contended, among other . things, that counts I through IV against Troy’s estate and counts I and III against Harold’s estate were barred by their respective statutes of limitations. Morgan attached, as an exhibit to her dismissal motion, a copy of the verified claim Jeff had filed in Troy’s estate proceedings.
Over Jeffs opposition, and without stating the reasons for its decision, the trial court granted Morgan’s dismissal motion, dismissing the claims against Troy's estate and Harold’s estate. Jeff subsequently filed a motion asking the trial court to “reconsider” that ruling (hereinafter referred to as a “motion to reconsider”), which the trial court denied, stating:
“The factual allegations [Jeff] makes in his complaint, viewed in a light most favorable to [Jeff], [do] not allege the existence of any promissory note that would have secured the mortgage. It is interesting that the ‘loan’ was to be repaid over a period of 30 years and [Jeff] claims that created a contract that the breach thereof would make the rule of repose inapplicable. Also, he claims the acts complained of would also not be outside the statute of limitations.
“Considering the allegations in a light most favorable to [Jeff], the Court finds the 20 year rule of repose applies to any mortgage, even one secured by a note that provides for payment over a period of 30 years because there is no allegation that there was a payment made within the 20 year period that would toll the rule of repose (and that also assumes the existence of a promissory note, not pled, that provides for such payment terms). The only element to the rule of repose is time.”
Thereafter, First Bank sought and obtained its own dismissal with prejudice from the case in consideration of the fact that it had been named as a party only as a result of its mortgage interest in Troy’s real property.

Standard of Review

In their briefs to this Court, the parties disagree as to the applicable standard of review. Morgan and First Bank appear to contend that their motions to dismiss were converted to motions for a summary judgment because matters outside the pleadings were submitted, and the trial court failed to exclude those matters. See Rule 12(b), Ala. R. Civ. P. (“If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule- 56.... ”). Morgan’s motion to dismiss included as an exhibit a copy of the verified statement of claim that Jeff had filed against Troy’s estate. Similarly, Jeffs response in opposition to that motion included both the statement of claim and the power of attorney. Nonetheless, the motions to dismiss were not converted to motions for a summary judgment, because the exhibits set out above were specifically referenced in Jeffs complaint and, thus, were not matters outside the pleading. Donoghue v. American Nat’l Ins. Co., 838 So.2d 1032, 1035 (Ala. 2002) (adopting the rule “precluding conversion when the exhibits in question are referred to in, and are central to, the plaintiffs complaint”). See also Lewis v. First Tuskegee Bank, 964 So.2d 36, 39 n. 1 (Ala.Civ.App.2007) (“ ‘[D]oeuments attached to a motion to dismiss are considered a part of the pleadings if those documents were specifically referred to in the plaintiffs complaint and are central to the claim being brought.” ’ (quoting Banks, Finley, White & Co. v. Wright, 864 So.2d 324, 327 (Ala.Civ.App.2001))).
*649 Morgan and First Bank allege that Jeffs motion to reconsider included evidence outside the pleadings, namely an affidavit executed by Jeffs counsel and supporting documentation — including an email communication from Morgan’s and First Bank’s counsel dated May 11, 2011— aimed at establishing that Troy had made several substantial payments to the nursing home where Thelma resided prior to her death. However, Jeff made no showing that the evidence submitted in support of his motion was newly discovered, that is, that it was discovered after the trial court entered its judgment of dismissal, nor did he offer any other explanation for his delay in filing the supporting documents, which were clearly received by his attorney prior to the hearing on Morgan’s dismissal motion and the trial court’s dismissal.[7] The parties present nothing indicating that Jeff could properly use a post-dismissal motion to reconsider to belatedly submit the materials he wished to provide to the trial court in opposition to the dismissal motion; therefore, the trial court could not, and apparently did not, consider the evidence when determining whether facts existed on which Jeff might ultimately prevail. Cf. Moore v. Glover, 501 So.2d 1187, 1189 (Ala.1986) (“[PJlaintiffs motion, with its attached exhibit and affidavit, sought to have the trial court reconsider its ... judgment in light of the new evidence (as opposed to ‘newly discovered evidence’) belatedly submitted by plaintiff.”). Because the trial court did not consider, and could not have considered, the untimely materials attached to Jeffs motion to reconsider, Morgan’s motion to dismiss, which had already been granted, did not convert to a motion for a summary judgment, and the appropriate standard of review is that applicable to a Rule 12(b) dismissal:
“ ‘On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim, that would entitle the plaintiff to relief.’
“Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993) (citations omitted).”
Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 791 (Ala.2007) (emphasis added).

Discussion

I. Rule of Repose

Jeffs primary claim on appeal, in light of the trial court’s apparent dismissal of his claims based solely on the application of the rule of repose, is that, when the allegations of his complaint are viewed in the light most favorable to him, he has alleged facts demonstrating “that the actions or omissions which form the basis of this suit occurred within twenty ... years of the [filing] date of [that] complaint.” (Jeffs brief, at p. 14.) More specifically, Jeff argues that his complaint alleged solely that the loan to Troy had not been repaid, omitting allegations “as to. the *650 terms of repayment, any partial payment or alternate payment arrangements, all of which would defeat the application of the rule of repose.” (Jeffs brief, at p. 16.)
As the trial court noted in its order denying Jeffs motion to reconsider, it apparently construed the complaint’s silence in that regard as Jeffs failure to allege any payment by Troy subsequent to the original loan date that would have tolled the rule of repose. The trial court apparently further concluded, despite the clear reference to the corresponding note and the terms of repayment included on the face of the copy of the mortgage attached to Jeffs amended complaint, that Jeff had failed to plead the existence of an agreement providing for an extended repayment period that might have also defeated the rule of repose. Those constructions appear to be contrary to the applicable standard, which requires that the allegations of the complaint be construed in Jeffs favor. See Lloyd Noland, supra.
With regard to the application of the rule of repose, we explained in Underwood, supra:
“The common-law rule of repose, which is an affirmative defense, Rector v. Better Houses, Inc., 820 So.2d 75, 78 (Ala.2001), ‘bars actions that have not been commenced within 20 years from the time they could have been commenced.’ Tierce v. Ellis, 624 So.2d 553, 554 (Ala.1998). The rule of repose ‘is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence [has been] obscured.’ Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982). ‘Lack of notice is not sufficient to avert the application of the [rule of repose].’ Ballenger v. Liberty Nat’l Life Ins. Co., 271 Ala. 318, 322, 123 So.2d 166, 169 (1960); accord Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 764 (Ala. 2002), and Ex parte Liberty Nat’l Life Ins. Co., 858 So.2d 950, 957-59 (Ala. 2003) (Johnstone, J., dissenting). ‘[T]he only element of the rule of repose is time.’ Boshell, 418 So.2d at 91.
“ ‘The only circumstance that will stay the running of the 20-year period of repose is a recognition of the existence of the claimant’s right by the party defending against the claim.’ Boshell, 418 So.2d at 92. The recognition must be distinct. Ballenger, 271 Ala. at 323, 123 So.2d at 169. Such a recognition will restart the running of the 20-year period. Hendley v. First Nat’l Bank of Huntsville, 234 Ala. 535, 537, 176 So. 348, 350 (1937). For example, a partial payment on a mortgage debt is sufficient recognition by the mortgagor of the lien of the mortgage to start a new 20-year repose period running on the mortgagee’s claims under the mortgage. Hend-ley, supra. Likewise, a statement in a deed that the property conveyed by the deed is subject to a mortgage is a sufficient recognition of the lien of the mortgage to start a new 20-year repose period running on the mortgagee’s right to enforce the lien. Braun v. Pettyjohn, 176 Ala. 592, 594-95, 58 So. 907, 908 (1912).
“The rule of repose begins running on a claim as soon as all of the essential elements of that claim coexist so that the plaintiff could validly file suit. Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 129 (2003) (Johnstone, J., writing specially).
“ ‘In some instances, [the first point in time when all of the essential elements of a claim first coexist so that the plaintiff could validly sue and, therefore, the point in time when the rule of repose begins to run] may be the same as the date of the “accrual” of a claim. However, ... repose does not depend on “accrual” because the concept of accrual sometimes incorporates other factors, such as notice, *651 knowledge, or discovery. For example, see Ala.Code 1975, § 6-2-3 (providing that a fraud claim does not accrue “until the discovery by the aggrieved party of the fact constituting the fraud”).’
“Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d at 764 n. 2. A suit on a tort claim may not be commenced until the defendant’s tortious act proximately causes the plaintiff to suffer an actual injury.1 Stephens v. Creel, 429 So.2d 278, 280-83 (Ala.1983). If a plaintiff’s actual injury resulting from a tort is the payment of premiums for an insurance policy, the payment of the first premium for the policy establishes the element of damage essential to a claim for the tort. Boswell v. Liberty Nat’l Life Ins. Co., 643 So.2d 580 (Ala.1994), and Donoghue v. American Nat’l Ins. Co., 838 So.2d 1032 (Ala.2002). On claims [of] unjust enrichment and money had and received, a plaintiff may commence a suit as soon as the defendant receives money and the circumstances imply the obligation to restore it. See Mutual Bldg. & Loan Ass’n v. Watson, 226 Ala. 526, 528, 147 So. 817, 817 (1933) (‘An action for money had and received is one in assumpsit based upon a promise to repay implied by law....’) ....
A suit on a breach-of-contract claim, on the other hand, may be commenced as soon as the defendant breaches the contract, regardless of whether the plaintiff has suffered an actual injury. Stephens v. Creel, 429 So.2d 278 (Ala.1983)....”
886 So.2d at 812-13.
As set out above, dismissal for failure to state a claim pursuant to Rule 12(b)(6) is appropriate only “when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.” Altrust Fin. Servs., Inc. v. Adams, 76 So.3d 228, 235 (Ala.2011). Thus, in order to survive a Rule 12(b)(6) motion based on the application of the rule of repose, Jeffs complaint only had to contain factual allegations supporting the “presum[ption] that the first missed payment occurred within twenty ... years of the date of [the] complaint.” (Jeffs brief, at p. 17.)
Here, Jeffs complaint alleges that Troy “fail[ed] to repay,” as promised, a purported loan, which, according to the attached mortgage, was reflected in a corresponding promissory note due and payable over a 30-year period. As Jeff correctly contends, his complaint merely alleged Troy’s default — a precursor to an action being filed against Troy by Thelma and James to recover on the underlying debt — not a specific date on which that default purportedly occurred. We agree, as Jeff also argues, that the trial court may not merely “presume that the first missed payment [did not] occur[ ] within twenty ... years of the ... complaint.” (Jeffs brief, at p. 17.) Further, Jeff includes in his brief to this Court authority establishing that any payment Troy made after an initial event of default would have restarted the repose period. See Underwood, 886 So.2d at 812 (“[A] partial payment on a mortgage debt is sufficient recognition by the mortgagor of the lien of the mortgage to start a new 20-year repose period running on the mortgagee’s claims under the mortgage.”).[8]
*652 Suffice it to say, we decline to conclude that Jeffs failure to allege a specific default date will support the trial court’s conclusion that no payment was ever made and applied to the outstanding loan balance. Mobile Infirmary v. Delchamps, 642 So.2d 954, 958 (Ala.1994) (“[T]he fact that [the plaintiff] did not allege the date when she first suffered bone degeneration in her jaw is not a ground for a dismissal under Rule 12(b)(6), Ala. R. Civ. P.”). Construing, as we must, the allegations of Jeffs complaint in his favor, there are facts, namely Troy’s payment history, that, assuming Jeff is able to establish them, would both defeat the rule of repose and entitle Jeff, on behalf of Thelma’s estate, to relief.
In reaching that conclusion, we are mindful of Jeffs simultaneous demand, via the proof of claim filed against Troy’s estate, for repayment of the entire “indebtedness reflected by the Mortgage,” which, the claim asserted, “remain[ed] due and owing.” Were we required to view that allegation in the light most favorable to the movants, it might support the trial court’s judgment. However, the applicable standard dictates a different result:
“When the sufficiency of a complaint is at issue, this Court will liberally construe the complaint in favor of stating a claim for relief. ‘Dismissals under Rule 12(b)(6) should be granted sparingly, and such a dismissal is proper only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief.’ Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986). ‘ “ ‘Where a [Rule] 12(b)(6) motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff.’ ” ’ Boswell v. Liberty Nat’l Life Ins. Co., 643 So.2d 580, 581 (AIa.1994), quoting Grant v. Butler, 590 So.2d 254, 255 (Ala. 1991), quoting in turn Greene County Bd. of Educ. v. Bailey, 586 So.2d 893, 897-98 (Ala.1991).”
Radenhausen v. Doss, 819 So.2d 616, 619-20 (Ala.2001).
In considering Rule 12(b)(6) dismissals, this Court has further observed:
“It is axiomatic that a 12(b)(6) motion should ‘seldom be granted and should only be granted when “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,” ’ Jeannie’s Grocery v. Baldwin County Electric Membership Corporation, 331 So.2d 665, 667 (Ala.1976). Upon consideration of the motion, which goes only to the face of the complaint, the allegations are to be considered in light favorable to the plaintiff and doubts resolved in his favor, Pruitt v. Pruitt, 343 So.2d 495 (Ala.1977); if the court doubts plaintiffs recovery, it should deny the motion, Trabits v. First National Bank of Mobile, 295 Ala. 85, 323 So.2d 353 (1975).”
Sims v. Lewis, 374 So.2d 298, 303 (Ala.1979).
Here, Thelma and James did not have a viable and cognizable claim against Troy until Troy defaulted on the mortgage debt, if indeed he did. Although the proof of claim seeks the full amount of the loan, we do not see that as foreclosing the possibility, as Jeff argues on appeal, that Troy may have made payments and that a lesser amount was actually due. Because the 20-year common-law rule of repose is premised upon a preexisting right to assert a claim and because Jeff may possibly demonstrate a factual scenario where default and the resulting right to sue occurred within 20 years of the filing date of the underlying suit, the trial court erred in simply dismissing Jeffs complaint in its entirety based on the date of the original *653 mortgage and the presumed application of the rule of repose. Further, because neither Morgan’s Rule 12(b)(6) motion nor First Bank’s subsequent motion for dismissal purported to assert any independent ground justifying a dismissal of Jeffs claims against First Bank, and because those claims are intertwined with Jeffs mortgage-based claims, the trial court erred in dismissing Jeffs claims against First Bank.

II. Statutes of Limitations

To the extent that the trial court’s dismissal may have been premised, in part, on the alternative statute-of-limitations ground included in Morgan’s dismissal motion, Jeff disputes that the applicable statutes of limitations bar his claims. As indicated by its order denying Jeffs post-dismissal motion to reconsider, the trial court does not appear to have considered this alternative argument in dismissing Jeffs complaint. However, given the well established principle that “ ‘[t]his Court may affirm a trial court’s judgment on “any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court,” ’ ” Warren v. Hooper, 984 So.2d 1118, 1121 (Ala.2007) (quoting General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 124 (Ala.2003), quoting in turn Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003)), we must examine the merits of each claim in light of the alternative statute-of-limitations ground.[9]

A. Breach-of-Contract Claim Against Harold’s Estate (Count I)

Count I of Jeffs complaint alleged a breach-of-contract claim against Harold’s estate based on Harold’s purported misuse of the powers granted him under the power of attorney executed by Thelma. More specifically, Jeff generally contended that, in acting contrary to Thelma’s best interests, Harold breached that power-of-attorney agreement. Notably, the language included in count I of Jeffs complaint does not specifically refer to the circumstances surrounding the release of the indebtedness and satisfaction of the mortgage, nor does it appear to limit Harold’s complained-of conduct to any one specific event or period of time while he was serving as Thelma’s attorney-in-fact. Further, count I specifically incorporated earlier factual allegations set out in Jeffs complaint, including the contention that “Troy ... and Harold ... seized control of Thelma[’s] ... assets and used them to their own benefit” during the last 10 years of Thelma’s life, i.e., from approximately March 1996 until March 2006.
Assuming, as we must under the applicable standard set out above, that Jeff can prove the allegation in his complaint that Harold received consideration in exchange for acting as Thelma’s attorney-in-fact, there may be circumstances under which Jeff can demonstrate that a valid contract was, in fact, created between Thelma and Harold. Compare Smith v. Wachovia Bank, N.A., 33 So.3d 1191, 1200 (Ala.2009) (holding that “[bjecause no promise or performance was extended to the wife by the husband for her performance under the power of attorney,” “the undertaking was gratuitous in nature and did not create any legally enforceable contract right”). Further, pursuant to its terms, the power of attorney Thelma executed was intended to be “a durable power of attorney” and to *654 remain in full force and effect until terminated by a subsequent writing executed by Thelma. Because nothing in the record suggests otherwise, we may presume that the power of attorney remained in effect and that Harold continued to serve as Thelma’s attorney-in-fact until Thelma’s death in March 2006.
The parties agree that an action alleging breach of contract is subject to the six-year statute of limitations found in § 6-2-34, Ala.Code 1975. Thus, even assuming that the power of attorney was not a contract under seal and thus subject to the more forgiving 10-year statute of limitations provided in § 6-2-33, Ala.Code 1975,[10] Jeff clearly filed his complaint in February 2011, less than 5 years after the power of attorney terminated in 2006. Construing the allegations of Jeffs complaint in his favor, as we must, we conclude that he may be able to prove a set of facts under which his claim against Harold’s estate based upon Harold’s purported breach of the power of attorney providing control of Thelma’s assets is not barred by the running of the limitations period. Therefore, the statute-of-limitations ground would not support dismissal of count I under Rule 12(b)(6).

B. Breach-of-Contract Claim Against Troy’s Estate (Count II)

Count II of Jeffs complaint alleged a breach-of-contract claim against Troy’s- estate based on Troy’s purported failure to repay the $46,000 loan from Thelma and James. Although Jeff failed to plead the existence of a note and specifically acknowledges, in keeping with the trial court’s findings, that he has not located the installment note referenced in the resulting mortgage, that acknowledgment does not preclude the possibility that one does exist or that Jeff could otherwise demonstrate a set of facts entitling him to relief on this claim as well. In fact, although Jeff does not state in his complaint that a “note”- exists, he does plead a contract, the terms of which are supported by the mortgage attached to and incorporated into his complaint.
Further, Jeff cites authority establishing that, in Alabama, “the statute of limitations does not begin to run against the payee until the last installment is due and unpaid.” Williams v. Williams, 497 So.2d 481, 483 (Ala.1986). Thus, assuming that Jeff can invalidate Harold’s release and demonstrate a 30-year installment debt, Jeffs complaint was filed before the last installment would have fallen due in 2018. Although Jeff may not ultimately prevail as to this issue, at present our sole concern is whether, under the facts alleged, he might ultimately be able to do so. Therefore, the trial court erred to the extent that it relied on the applicable statute of limitations in dismissing this claim.

C. Unjust-Enrichment/Restitution Claims Against Harold’s Estate and Troy’s Estate (Count III)

Initially, we note that count III of Jeffs complaint asserted unjust-enrichment claims against both Harold’s estate and Troy’s estate based on the general allegation that Harold and Troy “knowingly accepted the enjoyment and benefit of Thelma[’s] ... money and assets, including without limitation the Loan, without com *655 pensating [Thelma] in any way.” On appeal, however, Jeff appears to limit his claim of alleged unjust enrichment solely to Troy’s estate. (Jeffs brief, at p. 27.) Jeff makes no argument that his claim seeks damages against Harold’s estate for unjust enrichment; therefore, Jeff has waived any argument concerning the alleged unjust enrichment of Harold’s estate, and we affirm the trial court’s dismissal insofar as it relates to that claim. Tucker v. Cullmcunr-Jefferson Counties Gas Disk, 864 So.2d 317, 319 (Ala.2003) (stating that issues not raised and argued in brief are waived).
Further, the above-quoted language from Jeffs complaint both specifically references the loan and suggests a broader, more general misuse of Thelma’s assets by both Troy and Harold during her alleged incapacity spanning the last 10 years of her life, i.e., until her death in 2006. In his brief, however, Jeffs own interpretation of his complaint limits his claim to Troy’s alleged failure to repay the loan “in monthly installments over a period of thirty (30) years, beginning in 1988 and ending in 2018.” (Jeffs brief, at p. 27.) In performing our statute-of-limitations analysis, we, therefore, limit our analysis solely to the loan-based assertions in Jeffs complaint.
The parties disagree as to the applicable statute of limitations. Specifically, without including a citation to supporting authority, Jeff maintains that the six-year statute of limitations set out in § 6-2-34(9), Ala. Code 1975, applies to implied contracts and thus governs his unjust-enrichment claim. Contrary to that position, Morgan and First Bank cite nonbinding authority in support of the proposition that, depending on the source of the alleged unjust enrichment, either the two-year statute of limitations applicable to tort-based actions or the six-year statute of limitations applicable to contract-based claims may apply. See Auburn Univ. v. International Bus. Machs. Corp.-, 716 F.Supp.2d 1114, 1118 (M.D.Ala.2010) (“[S]ome unjust-enrichment claims, such as claims for enrichment flowing from a breach of the corporate fiduciary duties of loyalty and due care, clearly arise from tort injuries, while other unjust-enrichment claims, such as claims for enrichment flowing from the rendering of substantial performance on a merely technically invalid contract, clearly arise from contract injuries.”).
The court in Auburn University observed that “Alabama state courts have not decided whether unjust-enrichment claims are tort claims or implied-contract claims, much less which statute of limitations applies to such claims.” 716 F.Supp.2d at 1117. Our research similarly confirms that there is a distinct absence of authority definitively stating the statute of limitations applicable to an unjust-enrichment claim. We need not, however, decide that issue here.
Jeff argues that Troy’s estate was unjustly enriched each time a payment on the mortgage came due and Troy failed to make that payment. We agree. As set out above, there are circumstances alleged by Jeff that could establish that payments on the note secured by the mortgage were due over a 30-year period[11] and that the indebtedness was fraudulently and/or prematurely released. Assuming that Jeff successfully demonstrates those facts, payments on the note remain due at present and Troy’s estate continues to be unjustly *656 enriched by its alleged failure to pay. Therefore, construing the facts in favor of Jeff, we conclude that he may be able to demonstrate continuing unjust enrichment by Troy’s estate, which prevents his claim from being barred by application of even the two-year statute of limitations urged by Morgan and First Bank. Thus, the alternative ground included in Morgan’s motion similarly would not have supported the trial court’s dismissal of Jeffs unjust-enrichment claim against Troy’s estate.

D. “Money Had and Received” Claims Against Troy’s Estate

Jeffs complaint asserted, solely against Troy’s estate, a claim alleging “money had and received” based on Troy’s alleged “enjoy[ment] of the benefit of the loan without repaying the same.” As mentioned previously, with regard to “claims for ... money had and received, a plaintiff may commence a suit as soon as the defendant receives money and the circumstances imply the obligation to restore it.” Underwood, 886 So.2d at 813. See also Rice v. Tuscaloosa County, 242 Ala. 62, 67, 4 So.2d 497, 500 (1941) (holding that, as to a claim of money had and received, “[the] right of action accrues, and the statute of limitations begins to run, immediately upon the payment” and further citing the “many similar holdings supporting the view that the claim accrued on the date the money was paid” (emphasis omitted)); American Bonding Co. of Baltimore v. Fourth Nat’l Bank of Montgomery, 205 Ala. 652, 656, 88 So. 888, 842 (1921) (“Upon the receipt of this money by the bank an action arose in favor of said Estelle Mane-gold for money had and received, which action is barred in six years from the date of the accrual thereof.”).
The parties correctly agree that this particular claim, which clearly seeks “the recovery of money upon a loan,” is afforded a six-year limitations period under § 6-2-84(5), Ala.Code 1975. See also Johnson v. Life Ins. Co. of Alabama, 581 So.2d 438, 443 (Ala.1991). Morgan and First Bank argue, as to the money-had-and-reeeived claim, both that “[t]here could be no clearer starting date for the statute of limitations ... than the date of the mortgage in January of 1988” and that “the statute of limitations should have begin [sic] running on the first missed mortgage payment.” (Appellees’ brief, at pp. 32, 33.) Under either theory, the applicable statute of limitations appears to bar Jeff’s prosecution of the claim for money had and received and justifies its dismissal. Specifically, assuming that the statute of limitations began to run at the date of the mortgage, it expired in January 1994 — six years after Troy initially received the money from Thelma and James in January 1988. Alternatively, given that the alleged facts will not logically support the assumption that Troy continued making mortgage payments after the release of the indebtedness in 2002, and because this claim is not contract-reliant, then the statute of limitations expired in 2008 — six years after the release. Thus, regardless of which of the two alternate theories is applied, the statute would have run as to this particular claim well before the filing date of the underlying complaint.

Conclusion

In consideration of the foregoing, we affirm the Rule 12(b)(6) dismissal of Jeffs claim against Troy’s estate for money had and received (count IV) and the portion of count III representing Jeffs unjust-enrichment claim against Harold’s estate. The trial court’s judgment of dismissal of the remaining counts, however, must be reversed and the cause remanded for further proceedings.
*657 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MALONE, C.J., and STUART, PARKER, and WISE, JJ., concur.

. Although Morgan's motion sought dismissal "pursuant to 12(b)[, Ala. R. Civ. P.],” without specifying any particular subsection thereof, given the nature of the allegations therein and the trial court’s treatment of the motion, we construe it as having been made pursuant to Rule 12(b)(6), for "failure to state a claim upon which relief can be granted.” See 1 Moore’s Federal Rules Pamphlet § 12.4[5][d], p. 186 (2010) ("[T]he purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleader’s claims for relief.... ”); Camp-ton v. Miller, 19 So.3d 245, 249 (Ala.Civ.App. 2009) ("Our caselaw is clear ... that it is the substance of a motion, not its nomenclature, that is controlling; ‘the relief sought in a motion determines how to treat the motion.’ ” (quoting Allied Prods. Corp. v. Thomas, 954 So.2d 588, 589 n. 3 (Ala.Civ.App.2006))).

. It is unclear from the record whether James was deceased at the time the underlying proceeding was initiated; however, the record is devoid of any mention of either James or his *647 estate as a party; therefore, it appears that James predeceased Thelma.

. A copy of the mortgage, which had been duly recorded with the Marshall County Probate Court, was attached to Jeff's complaint. The mortgage specifically referenced a "promissory note bearing even date with this instrument ... due and payable in (360) consecutive monthly installments of $345.66 each beginning 3/5/88.... ”

. Following Harold’s release of the indebtedness, Troy subsequently pledged the same property pledged as security for the $46,000 loan as collateral for a $51,994.53 loan he obtained from First Bank.

. In their brief to this Court, Morgan and . First Bank represent that, apparently unbeknownst to Jeff, Morgan was also appointed executrix of Harold’s estate, and Harold’s will has since been probated.

. Actually, Jeff's amended complaint included two counts labeled "Count Four.” Because his claim for declaratory relief was the second such claim, and to avoid confusion, we have designated that count as "count V" for purposes of this opinion.

. An affidavit by Jeff’s counsel, which accompanied Jeff’s motion to reconsider, did represent that "[he] did not retrieve the ... email for several days thereafter"; however, the affidavit failed to allege a specific date on which Jeff's counsel did retrieve the e-mail and clearly did not allege that it was not retrieved within sufficient time to have been submitted before the trial court entered its judgment of dismissal.

. To the extent that Jeff argues that the evidence accompanying his post-dismissal motion to reconsider potentially established some type of alternate payment arrangement, which tolled the rule-of-repose period, the trial court could not have properly considered that evidence. See supra note 7.

. Because the acts or omissions giving rise to counts I through IV of Jeff's complaint serve as the basis for Jeff’s request for declaratory relief in count V, we do not interpret count V as asserting an independent cause of action to which a separate statute of limitations would apply. We note that Morgan took a similar position in her dismissal motion.

. To the extent that Jeff argues that the power of attorney was a contract under seal and thus governed by a 10-year statute of limitations and that he, thus, had 10 years from the date of the release of the indebtedness in 2002 — the sole breach event particularly described in, his complaint — to sue, we note, as do the parties, "that the guiding doctrine in determining whether a contract is sealed is the intent of the contracting parties.” K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So.2d 671, 674 (Ala. 1992). Therefore, there seem to be facts alleged that, assuming Jeff can prove them, would support the application of a 10-year statute of limitations.

. No party argues the existence of an acceleration clause or the potential effect of such a clause on Troy’s obligation under the note. Regardless, however, "Alabama cases have historically considered the optional acceleration clause to be for the benefit of the creditor, and have held that the debt does not mature for the purpose of the statute of limitations until the last installment is due and unpaid.” Williams, 497 So.2d at 482.